```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT
```

```
                                     :
GORDON E. CAMPBELL, JR.,             :
                                     :
            Plaintiff,               :
                                     :         Case No. 2:14-cv-93
       v.                            :
                                     :
ANDREW PALLITO and                   :
DAVID MINER,                         :
                                     :
            Defendants.              :
                                     :
```

## Opinion and Order

Plaintiff Gordon E. Campbell, Jr., proceeding *pro se*, brings this action against Defendants Andrew Pallito and David Miner in both their individual and official capacities.  Pallito is the Commissioner of the Vermont Department of Corrections ("Department"), and Miner is the District Manager of the Bennington Probation and Parole Office.  In his complaint, Campbell alleges that the Department has failed to make a reasonable accommodation for his learning disabilities so that he can participate in a treatment program ordered as a condition of his probation.  Campbell seeks both injunctive relief and $25,000 in damages.

Now before the Court are Defendants' motion for judgment on the pleadings (ECF No. 24) and Campbell's motion to compel

discovery (ECF No. 25).  For the reasons explained below, Defendants' motion is **granted**, Campbell's motion is **denied**, and Campbell is granted leave to file an amended complaint within 30 days.

## BACKGROUND

According to his complaint, Plaintiff Campbell began participating in a treatment program as a condition of probation in or around January 2014.  ECF No. 3 at 2.  Campbell alleges that he has been diagnosed with various learning disabilities and short-term memory deficit, and that he informed a Burlington[1] probation officer that he requires a reasonable accommodation for his intellectual disabilities in order to participate in treatment.  ECF No. 3 at 2.  Despite his request, Campbell claims that the Department has yet to provide him with an accommodation.  ECF No. 3 at 2.

On May 7, 2014, Campbell filed this action against Defendants Pallito and Miner in both their individual and official capacities.  ECF No. 3.  Campbell asserts that the Department has denied him a reasonable accommodation and requests injunctive relief, as well as $25,000 in damages.  ECF No. 3 at 2-3.  Defendants filed an Answer on July 7, 2014, ECF No. 7, and moved for judgment on the pleadings on March 9, 2015,

---

[1] In his complaint, Campbell states that "when [he] was let go from court . . . [he met] with a probation officer from Burlington."  ECF No. 3 at 2.  Because Campbell is supervised by the probation office in Bennington, however, it is unclear whether he wrote "Burlington" by mistake.

2

ECF No. 24.  Campbell filed his motion to compel discovery on March 18, 2015.  ECF No. 25.

## DISCUSSION

### I. Defendants' Motion for Judgment on the Pleadings

#### A. Legal Standard

In deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), district courts employ the same standard applicable to motions to dismiss pursuant to Rule 12(b)(6).  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  Accordingly, the Court will accept all factual allegations in the complaint as true and draw all reasonable inferences in Plaintiff's favor.  *Id.*  In order to survive a Rule 12(c) motion, Plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id*. (internal quotation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 556 (2007)).

Furthermore, in a case in which the plaintiff is unrepresented by counsel, a court "must interpret the factual allegations of a *pro se* complaint to raise the strongest

arguments that they suggest." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation omitted).  "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Id.*  (internal quotation and alterations omitted).

**B. Plaintiff's 42 U.S.C. § 1983 Claim**

In his complaint, Campbell explicitly states that he is bringing the present suit pursuant to 42 U.S.C. § 1983.  ECF No. 3 at 2.  Section 1983 provides a cause of action against "any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States."  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing 42 U.S.C. § 1983).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Id.* (internal citations omitted).  Thus, to succeed on a § 1983 claim, "a plaintiff must establish that a person acting under color of state law deprived him of a federal right."  *Id.* (internal citations omitted).

**1. The Alleged Violation of Plaintiff's Federal Rights**

As an initial matter, Campbell does not make clear in his complaint which of his federal rights he claims Defendants to have violated.  Campbell states only that the Department has

4

denied him a reasonable accommodation for his intellectual disabilities, making no mention of how Defendants' conduct deprived him of a specific federal right.  *See* ECF No. 3 at 2.  Construing Campbell's pleadings liberally, as the Court must, the complaint may be read to allege a violation of the Americans with Disabilities Act ("ADA") or the Equal Protection Clause of the Fourteenth Amendment.  As plead, however, Campbell's § 1983 claim cannot survive Defendants' motion for judgment on the pleadings.

Beginning with the alleged ADA violation, it is well settled in the Second Circuit that "[a] § 1983 action may not . . . be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement."  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (internal citation omitted).  Reasonable accommodation for a disability in a public program is a right secured by statute, *see* ADA, 42 U.S.C. 12132, not the Constitution, *see Bd. of Trs. of Univ. of Ala. V. Garrett*, 531 U.S. 356, 368 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause.").  Thus, insofar as Campbell's claim of disability discrimination is based on the substantive rights provided by the ADA, it is not actionable under § 1983.  *See EC ex rel. RC v. Cnty. of Suffolk*, 882 F.

Supp. 2d 323, 355 (E.D.N.Y. 2012) ("ADA has its own right of enforcement and, consequently, an ADA action may not be brought pursuant to 42 U.S.C. § 1983.").

Next, Campbell's complaint may also be read to assert a violation of the Equal Protection Clause of the Fourteenth Amendment. The Fourteenth Amendment provides in part that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. That provision, known as the Equal Protection Clause, "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal citation omitted). When evaluating a claim brought under the Equal Protection Clause, the general rule is that state legislation or other official action "is presumed to be valid and will be sustained if the classification drawn by the [official action] is rationally related to a legitimate state interest." *Id.* at 440 (internal citations omitted). "The general rule gives way, however, when [the official action] classifies by race, alienage, or national origin." *Id.* In those cases, the action is "subjected to strict scrutiny and will be sustained only if [it is] suitably tailored to serve a compelling state interest." *Id.* A classification based on gender also "call[s] for a heightened standard of review" and "fails unless it is

6

substantially related to a sufficiently important governmental interest."  *Id.* at 440-41.

With respect to the intellectually disabled, the Supreme Court has held that they are not a suspect class for the purposes of the Equal Protection Clause.  *Id.* at 442; *accord Suffolk Parents of Handicapped Adults v. Wingate*, 101 F.3d 818, 824 n.4 (2d Cir. 1996) (declining to treat disabled individuals as a protected class under the Equal Protection Clause).  Of course, the fact that the intellectually disabled are not considered a suspect class "does not leave them entirely unprotected from invidious discrimination."  *City of Cleburne*, 473 U.S. at 446.  Rather, official action "that distinguishes between the [intellectually disabled] and others must be rationally related to a legitimate government purpose."  *Id.*

In the present matter, Campbell has not asserted any facts indicating that he is a member of a suspect class.  *See* ECF No. 3 at 2.  Moreover, Campbell's allegations do not identify any official action that distinguished between treatment participants with intellectual disabilities and treatment participants without such disabilities.  *See* ECF No. 3 at 2.  The complaint states only that the Department did not make a reasonable accommodation for Campbell's learning disabilities. ECF No. 3 at 2.  Absent a more specific claim that Defendants treated him differently than similarly-situated non-disabled

7

persons on account of his intellectual disabilities, Campbell has failed to adequately plead a violation of the Fourteenth Amendment.

Finally, Campbell's complaint may also assert that he was unfairly denied a reasonable accommodation by Defendants irrespective of his intellectual disabilities.  The Supreme Court has recognized a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  To succeed on such a claim, "a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."  *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010) (internal citation omitted).

Here, Campbell has not sufficiently stated such a claim.  As Defendants note, Campbell's complaint does not contain any information regarding similarly situated individuals.  *See* ECF No. 3 at 2.  The complaint also fails to describe how Defendants

8

have treated Campbell differently than any other participant in the treatment program.  *See* ECF No. 3 at 2.  Accordingly, Campbell has not properly pleaded a "class of one" equal protection claim, and has failed to demonstrate a violation of his federal rights.

### 2. Eleventh Amendment Sovereign Immunity

Beyond contending that Campbell has failed to allege a violation of his federal rights, Defendants submit that Campbell's § 1983 claim against Pallito and Miner in their official capacities is barred by Vermont's sovereign immunity.  Under the doctrine of sovereign immunity, the Eleventh Amendment prohibits suits by private citizens against a state or its agencies in federal court unless the state has waived its immunity or Congress has properly abrogated the state's immunity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984).  The protection of the Eleventh Amendment also extends to suits for monetary damages against state officers sued in their official capacities.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) ("[A] claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment.").  The protection does not extend, however, to injunctive or

declaratory actions brought against state officials in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169 n.18.

Here, neither Vermont nor Congress has waived the sovereign immunity that protects Defendants from suits for damages brought against them in their official capacities. Vermont has expressly preserved its immunity under the Eleventh Amendment, *see* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not explicitly waived), and Congress did not intend to abrogate the states' sovereign immunity by enacting § 1983, *see Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Accordingly, the Campbell's § 1983 claim for monetary damages against Pallito and Miner in their official capacities is barred by the Eleventh Amendment.

### 3. Personal Involvement

With respect to Campbell's § 1983 claim against Pallito and Miner in their individual capacities, Defendants contend that Campbell has failed to show that Pallito and Miner were personally involved in the alleged unlawful conduct. The Second Circuit has long held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation omitted). Personal involvement can be shown by evidence that:

10

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal citation omitted).

Here, Campbell's complaint does not assert sufficient facts to show that either Defendant was personally involved in the alleged violation of Campbell's federal rights. With respect to Pallito, the complaint in no way suggests that he had any involvement in the purported misconduct. In fact, Pallito's name is not mentioned anywhere in the complaint outside of the case caption. As to Miner, Campbell states only that he "[oversees] the Bennington office and he would not talk to [Campbell] and he should be aware of what[] [is] going on . . . ." ECF No. 3 at 2. Such assertions are similarly inadequate to establish personal involvement for a claim brought under § 1983.

For the reasons explained above, Campbell's complaint fails to state a plausible claim for relief under § 1983.

Accordingly, Defendants motion for judgment on the pleadings with respect to Campbell's § 1983 claim is **granted.**

### C. Plaintiff's ADA Claim

In addition to raising a claim under § 1983, Campbell's complaint may be liberally interpreted to allege a violation of Title II of the ADA. Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prevail on a violation of Title II, a plaintiff must therefore establish "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Mary Jo C. v. New York State and Local Ret. Sys.*, 707 F.3d 144, 153 (2d Cir. 2013) (internal citation omitted).

In the present case, Campbell asserts in his complaint that he has been diagnosed with various learning disabilities and short-term memory deficit. ECF No. 3 at 2. Campbell further states that he has been participating in a treatment program as a condition of his probation, and that the Department has denied his request for a reasonable accommodation for his learning

12

disabilities. ECF No. 3 at 2. Defendants offer several arguments as to why Campbell's Title II claim should be dismissed.

### 1. Individual Liability

Defendants first submit that Campbell's Title II claim against Pallito and Miner in their individual capacities should be dismissed. As Defendants correctly assert, there is no individual liability under Title II of the ADA. *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (indicating that "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."). Accordingly, the Court **grants** Defendants' motion for judgment on the pleadings as to Campbell's Title II claim against Pallito and Miner in their individual capacities.

### 2. Eleventh Amendment Sovereign Immunity

Next, Defendants assert that Campbell's Title II claim for monetary damages against Defendants in their official capacities must be dismissed on the grounds that Title II is an invalid abrogation of Eleventh Amendment immunity. As stated above, the Eleventh Amendment prohibits suits by private citizens against a state or its agencies in federal court unless the state has waived its immunity or Congress has properly abrogated the state's immunity. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at

98-99.  The protection of the Eleventh Amendment also extends to suits for monetary damages against state officers sued in their official capacities.  *Kentucky v. Graham*, 473 U.S. at 169 (1985).

With respect to Title II of the ADA, it is clear that Vermont has not waived its sovereign immunity.  *See* 12 V.S.A. § 5601(g).  It is less clear, however, whether Title II is a valid abrogation of the states' sovereign immunity.  Congress may abrogate the states' sovereign immunity "if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment."  *Nevada Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003) (internal citations omitted).  In determining whether there has been a valid abrogation of sovereign immunity for the purposes of a private action for monetary damages under Title II, district courts in the Second Circuit have applied the three-part test presented by the Supreme Court in *United States v. Georgia*, 546 U.S. 151 (2006).  Pursuant to the test set forth in *Georgia*, a reviewing court is to determine, "'on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported

abrogation of sovereign immunity as to that class of conduct is nevertheless valid.'" *Goonewardena v. New York*, 475 F. Supp. 2d 310, 323 (S.D.N.Y. 2007) (quoting *Georgia*, 546 U.S. at 159); *see also Andino v. Fischer*, 698 F. Supp. 2d 362, 377 (S.D.N.Y. 2010).

Here, as discussed below, Campbell has failed to show that the state's alleged conduct violated Title II of the ADA. Therefore, the Court need not reach the constitutional question addressed by the remaining two prongs of the *Georgia* analysis. *See Goonewardena*, 475 F. Supp. 2d at 323 ("If there is no violation of Title II, then the *Georgia* analysis ends and the claim is dismissed on the ground that plaintiff has failed to state a claim rather than that the court lacks jurisdiction due to sovereign immunity.").

### 3. Plaintiff's Reasonable Accommodation Claim

Finally, Defendants contend that Campbell has failed to establish the second element of a Title II violation. The second element a plaintiff must prove to demonstrate a violation of Title II is that he was denied the opportunity to participate in or benefit from a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity. *See* 42 U.S.C. § 12132; *Mary Jo C.*, 707 F.3d at 153. Here, Campbell admits in his complaint that he has been participating in the treatment program. ECF No. 3 at 2.

Moreover, although he states that he has asked for "help" and a "reasonable accommodation," nowhere in his complaint does he explain what the program requires and/or offers, or how he has been denied the benefits of the program. In fact, the complaint is entirely devoid of any substantive information regarding the program. Thus, because it is unclear what the program involves and how Campbell's intellectual disabilities impact his ability to engage in treatment, Campbell has failed to demonstrate that he has been denied the opportunity to participate in or benefit from the Department's treatment program. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 277 (2d Cir. 2003) (holding that a reasonable accommodation claim under Title II requires a plaintiff to "demonstrate that a disability makes it difficult for [him] to access benefits that are available to both those with and without disabilities.").

Furthermore, Campbell has failed to demonstrate that Defendants have otherwise discriminated against him. It is well-established that a defendant discriminates within the meaning of Title II "when it fails to make a reasonable accommodation that would permit a qualified disabled individual to have access to and take a meaningful part in public services." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). The burden is on the plaintiff, however, to prove that an accommodation exists. *Jackan v. New York State Dept. of*

16

*Labor*, 205 F.3d 562, 566 (2d Cir. 2000).[2]  It is then a factual issue "whether a plaintiff's proposed modifications amount to 'reasonable modifications' which should be implemented, or 'fundamental alterations,' which the state may reject." *Mary Jo. C*, 707 F.3d at 153 (internal quotation and alterations omitted).

In the present case, as Defendants note, Campbell has not proposed any accommodation.  *See* ECF No. 3 at 2.  The complaint states that Campbell has asked for "help," but it does not suggest what type of help the Department should provide.  *See* ECF No. 3 at 2.  Such a vague statement cannot serve to establish that Defendants have discriminated against Campbell by failing to provide him with a reasonable accommodation, for it does not adequately identify the type of accommodation required.  For all of the reasons stated above, Defendants' motion for judgment on the pleadings with respect to Campbell's ADA claim is **granted**.

**II.  Plaintiff's Motion to Compel Discovery**

The Court now turns to Campbell's motion to compel discovery.  In his motion, Campbell requests an order requiring Defendants to turn over "all Discovery."  ECF No. 25.

---

[2] *Jackan* addresses reasonable accommodation claims in the context of Title I of the ADA.  In *McElwee*, however, the Second Circuit indicated that in cases brought under Title II of the ADA, courts may look for guidance to case law under Title I, in part because "courts use the terms 'reasonable modifications' in Title II and 'reasonable accommodations' in Title I interchangeably."  700 F.3d at 640 n.2 (internal citations omitted).

Pursuant to Local Rule 26(d)(2), a party filing a motion to compel must include an affidavit stating that he has made a good faith effort to resolve the dispute without court intervention. The affidavit must also list any unresolved issues and the reasons therefore, as well as the dates and other details regarding the communications between the parties. *See* Local Rule 26(d)(2).

Here, although Campbell's motion includes correspondence that he has sent to opposing counsel, it fails to provide an affidavit with the information required by the Local Rule. Most importantly, the motion does not indicate any particular issues that are outstanding. Rather, it simply requests that Defendants turn over "all Discovery." ECF No. 25. In addition, Defendants indicate that the Department has already provided Campbell with (1) a copy of its ADA policy; (2) all of the ADA documentation related to Campbell's treatment while in the community; (3) all case notes related to Campbell's programming in the community; and (4) Campbell's treatment records. *See* ECF No. 27. The remainder of Campbell's requests, as evidenced by his letters to opposing counsel, appear to pertain to documents unrelated to the claims at bar. Thus, lacking compliance with the Local Rule, and given that records beyond those relevant to Campbell's claims are not discoverable, *see* Fed. R. Civ. P. 26(b)(1), the motion to compel is **denied.**

**CONCLUSION**

As explained above, Defendants' motion for judgment on the pleadings (ECF No. 24) is **granted,** and Plaintiff's motion to compel discovery (ECF No. 25) is **denied.** In addition, Plaintiff is granted leave to file an amended complaint within 30 days. Plaintiff's amended complaint shall not include a 42 U.S.C. § 1983 claim for monetary damages against Pallito or Miner in their official capacities, as such a claim is barred by the Eleventh Amendment. Nor shall Plaintiff's amended complaint include a claim brought under Title II of the ADA against Pallito or Miner in their individual capacities, as Title II of the ADA does not provide for individual liability. Failure to file an amended complaint within 30 days may result in the dismissal of Plaintiff's suit with prejudice.

Dated at Burlington, in the District of Vermont, this 5th day of January, 2016.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge